UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:

SALUBRIO, LLC,                                    Bankruptcy Case No. 20-50578-RBK

    *Debtor*.

_____

DOUGLAS K. SMITH, MD,

    *Appellant*,

v.                                                Case No. SA-21-CV-0476-JKP

ERIC B. TERRY, Chapter 7 Trustee,                 (Appeal from Order in
Salubrio LLC.,                                    Bankruptcy Case No. 20-50578-RBK)

    *Appellee*.

**MEMORANDUM OPINION AND ORDER**

Before the Court is an appeal from an order in Bankruptcy Case No. 20-bk-50578-RBK. Pursuant to 28 U.S.C. § 158(a), Appellant Douglas K. Smith, MD, ("Dr. Smith" or "Appellant") appeals an order of the Bankruptcy Court issued on May 3, 2021, after a hearing. Appellant proceeds pro se in this appeal and is an interested party of the corporate debtor in the underlying bankruptcy action. In the appealed order, the Bankruptcy Court authorized the Chapter 7 Trustee for the Debtor to abandon the estate's interest in physical and locally stored electronic records. Eric B. Terry is the Chapter 7 Trustee and the Appellee in this appeal.

On June 21, 2021, the Bankruptcy Court certified that Appellant's designation of the record on appeal ("ROA") is complete and transmitted designated items. *See* ECF No. 2. That same date, Appellant filed his appellate brief. *See* ECF No. 3. Two days later, the Bankruptcy Court certified that Appellee's designation of additional items to include in the ROA is complete and transmitted those designated items. *See* ECF No. 5. Appellee has filed his brief (ECF No. 7) and Appellant has filed his reply brief (ECF No. 8). In two later filings, docketed as Advisories to the Court, Appellant

has submitted a transcript of the motion hearing (ECF No. 9) and an amended appellate brief with proper format (ECF No. 10).[1] The appeal is ready for ruling.

Having considered the issues raised in this appeal to the extent necessary, the arguments of the parties, the relevant portions of the record, and the applicable principles of law, the Court finds no need for oral argument and, for the reasons that follow, it dismisses this appeal for Appellant's lack of bankruptcy standing.

## I. BACKGROUND

On March 11, 2020, Salubrio, LLC ("Salubrio"), the debtor in the underlying bankruptcy action, filed a voluntary petition for relief under Chapter 11, Subchapter V, of the Bankruptcy Code. *See* Bankruptcy Docket Sheet (ECF No. 2-3) at 2. During the Subchapter V proceedings, the Bankruptcy Court appointed Mr. Terry as Trustee and he continued in that capacity after the matter was converted to Chapter 7. *See* R.[2] at 4 nn. 1-2.

Pursuant to 11 U.S.C. §§ 1107(a) and 1108, the Debtor initially operated its business and managed its property as a debtor-in-possession. On June 10, 2020, the Bankruptcy Court granted a motion to remove the debtor in possession. *See* ECF No. 2-3 at 22 (D.E. 140 and related entries). On September 23, 2020, the Bankruptcy Court converted the Chapter 11 bankruptcy to Chapter 7 and removed Mr. Terry as Chapter 11 Trustee. *See id*. at 42 (D.E. 261).

Salubrio is a single member limited liability company ("LLC") owned by Dr. Smith which is located on Basse Road in San Antonio, Texas. R. at 68. It provided "Diagnostic MRI services for personal injury evaluations." R. at 64. As part of its bankruptcy, Salubrio filed the following forms:

(1) Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum),

---

[1] Because the transcript is contained within the official record on appeal, *see* ECF No. 5-3, there is no need for the duplicate transcript. The Court will address the amended brief later.

[2] The Court uses "R." to refer to the initial bankruptcy record on appeal, which is found at ECF No. 2-2. The Court will refer to the supplemental record on appeal, found at ECF No. 5-2, as "Supp. R."

R. at 29;

(2) Schedule A/B: Assets – Real and Personal Property (Official Form 206A/B), R. at 30-36;

(3) Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D), R. at 37-40;

(4) Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F), R. at 41-51;

(5) Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G), R. at 52;

(6) Schedule H: Codebtors (Official Form 206H), R. at 53-54;

(7) Declaration Under Penalty of Perjury for Non-Individual Debtors (Official Form B202), R. at 55;

(8) Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207), R. at 56-70; and

(9) Disclosure of Compensation of Attorney for Debtor (Form B2030), R. at 71-72.

As President of the Debtor, Dr. Smith signed these forms (other than the summary and disclosure of compensation) under penalty of perjury. *See* R. at 55, 70.

According to Schedule A/B, the Debtor's assets primarily consisted of accounts receivable. *See* R. at 30-36. But the assets also included cash or cash equivalents; minimal computer and office equipment valued at $1,500.00; and a sublease valued at $1.00. *See* R. at 30, 33-34, 36. And, as found by the Bankruptcy Court, the Debtor's property also included billing and other pertinent medical records of its patients ("Patient Records") that warranted a qualified protective order to ensure compliance with applicable laws. *See* R. at 4-5. The Bankruptcy Court approved certain recipients "to use, disclose, and receive Patient Records," including the Trustee, his attorneys, and other consultants, professionals, and third parties engaged by the Trustee. *See* R. at 5-6.

Although numerous creditors are listed on the filed schedules, the official forms do not list Dr. Smith as a creditor. *See* R. 29-72. Instead, he has acted as the Debtor's corporate representative. *See* R. 55, 70. He also controls various non-debtor entities, including Musculoskeletal Imaging

Consultants, LLC ("MSKIC") and Complete Radiology Management Solutions, LLC ("CRMS"). *See* R. 197-99 (showing he signed on their behalf).

On April 21, 2021, the Trustee filed a motion, hereinafter referred to as Motion to Abandon, that led to the appeal now before the Court. *See* R. 8-18 (entirety of the motion). On that same date, he filed a motion to expedite consideration. *See* R. 19-24 (entirety of motion to expedite). The next day, he emailed notice of an expedited hearing on the motion to Dr. Smith. *See* Supp. R. 4-5.

On April 23, 2021, Dr. Smith, as a party-in-interest, filed partial objections to the Motion to Abandon. *See id*. at 7-17 (entirety of objections). Within the objections, he described himself as "Owner" or "Trust Settlor." *See*, *e.g.*, *id*. at 8. As one reason for objecting, he argued that the "Trustee and his professionals should be estopped from now asserting control over the personal property of the licensed physician, Dr. Smith." *Id*. at 9. He contended "that medical records documenting medical care performed under his medical license are his personal property under Texas state laws and Trustee has no ownership claim to Dr. Smith's personal property." *Id*. While objecting to certain matters, Dr. Smith stated that he "has no objection to Trustee abandoning all Debtor interest in property at Basse location." *Id*. at 12. Thus, although he asked the Bankruptcy Court to deny some requested relief, he also requested that the court grant the Motion to Abandon "any estate property that may exist at Basse location." *Id*. at 15.

Dr. Smith objected to what he contended was the Trustee's improper attempt to seize third party property for which the Trustee allegedly had not proven to be property of the Debtor's estate. *Id*. at 13. He described the third-party property as items including but not limited to "Trade Secrets of separate legal entities including MSKIC and CRMS that are protected by Defend Trade Secrets Act of 2016." *Id*. Further, based on his contention that he owned "all medical records performed under his license," he objected to the Trustee's requested relief to remove, scan, and then store physical records if he refused to retrieve or arrange for the records to be delivered after written

4

notice. *Id*. In addition, he objected to the copying and wiping of all locally stored electronic data on any computer drives and MRI machines located on the premises. *Id*.

On April 29, 2021, the Bankruptcy Court held a telephonic hearing on the Motion to Abandon. *See* Tr. Mot. H'rg of Apr. 29, 2021, (ECF No. 5-3) (hereinafter Tr.) at 3-59. Dr. Smith continued to object to abandoning property owned by separate legal entities, *see id*. at 21, 27-30, 36, 43-44, 47, 50-51, 58, and himself, *see id*. at 30-31, 36, 44. The Trustee contended that, due to "the way that Dr. Smith ran Salubrio and the non-debtor entities, information had been comingled and the system set-up has caused confusion. *Id*. at 24-25. The Bankruptcy Court stated that, in its view, there is no question "that the information is something that's essential to the estate" and that Salubrio owns the information. *Id*. at 45. It recognized that "MSKIC or CRMS may own the computers" and other physical office equipment, but the information within any such items is necessary "to liquidate the assets of this estate." *Id*. at 45-46. It specifically found that the information is "property of the estate." *Id*. at 57. It found that for the Trustee "to do his job and liquidate the assets of the estate, he's got to have the information in order to prove these claims against the personal-injury claimants and their law firms." *Id*. at 52-53. It found that the information may be copied in a confidential manner and then notice can be given "to MSKIC and CRMS" and "the computers will be delivered to those entities wherever they specify." *Id*. at 53. It also stated:

> The issue today is copying and then basically abandonment of these electronic records. And I'm saying that they can copy them because they've got to have access to the information, and then they can abandon them to CRMS, MSKIC, or whoever is the lawful owner of the hardware, obviously, with protections where the hardware needs to be protected against disclosure of confidential information. But if MSKIC and CRMS want to keep the information on the hardware, I guess they can do that. They're the owners of the hardware, apparently.

Id. at 54. The Bankruptcy Court also indicated that Dr. Smith could have "the computers with the information on it . . . on behalf of the owner, which is either MSKIC or CRMS." *Id*. at 46.

The day after the hearing, Dr. Smith initiated an individual bankruptcy case on his own

5

behalf pro se. *See In Re Smith*, No. 5:21-bk-50519-rbk (filed April 30, 2021) (Bankr. ECF No. 1 (Chapter 11 petition)). And the Bankruptcy Court appointed Brad W. Odell as Trustee on May 5, 2021. *See id*. (Bankr. ECF No. 12).

On May 3, 2021, two days prior to appointing the Trustee in Case No. 5:21-bk-50519-rbk, the Bankruptcy Court granted the Motion to Abandon. *See* R. at 205-07. In that order, the Bankruptcy Court, among other things, "authorized, but not directed" the Trustee in this case to (1) "abandon the estate's interest in the physical and locally stored electronic records located" inside the Basse Road premises of the Debtor and (2) "have some or all physical records and computer hard drives containing locally stored electronic data . . . removed and then copied or scanned by a vendor of his choice." *Id*. at 206. The court also ordered that those records and hard drives "shall be made available" to Dr. Smith, "individually and in his capacity as a representative of [CRMS] and/or Musculoskeletal Imaging Consultants, LLC, for his retrieval (from the Premises or from the vendor's location if such records are removed) or to arrange delivery to him." *Id*.

On May 17, 2021, Dr. Smith appealed the Bankruptcy Court's order on the Motion to Abandon. *See* R. at 208-09. As characterized by Dr. Smith, he filed the instant bankruptcy appeal as party-in-interest as to the underlying bankruptcy case, No. 20-bk-50578-rbk, and as a debtor-in-possession in relation to Case No. 5:21-bk-50519-rbk. *See id*. at 208. He filed the appeal pro se, not through counsel or through the Trustee appointed in the individual bankruptcy case.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a), which provides district courts with the authority to hear appeals from final judgments and orders of bankruptcy judges. The Bankruptcy Court exercised jurisdiction over the underlying matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334 as a core proceeding as set forth in § 157(b)(2)(A) and (O).

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in,

and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). "Pursuant to 28 U.S.C. § 1334, the district court has exclusive jurisdiction of all bankruptcy cases under title 11 and 'original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.'" *Wilson v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 478 (5th Cir. 2009) (quoting § 1334(b)). And § 157(b)(1) provides that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."

"On appeal, 'the burden is on the appellants to show error.'" *Edwards Family P'shp, LP v. Johnson (In re Cmty. Home Fin. Servs. Corp.)*, 32 F.4th 472, 484 (5th Cir. 2022) (quoting *Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30, 31 (5th Cir. 1963)). "When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as a[n] appellate court and applies the standard of review generally applied in federal court appeals." *First Nat'l Bank v. Crescent Elec. Supply Co.*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103-04 (5th Cir. 1992)). As recognized in *Webb*, "[a] core proceeding is one that invokes a substantive right provided by Title 11 [of] the Bankruptcy Code or is a proceeding that by its nature could arise only in the context of a bankruptcy case." 954 F.2d at 1103 n.1 (citation and internal quotation marks and brackets omitted); *accord In re Morrison*, 555 F.3d at 479.

Courts review a bankruptcy court's findings of fact under the clearly erroneous standard, but review questions of law *de novo*. *Saenz v. Gomez*, 899 F.3d 384, 390 (5th Cir. 2018); *Wiggains v. Reed*, 848 F.3d 655, 660 (5th Cir. 2017); *Thaw v. Moser*, 769 F.3d 366, 368 (5th Cir. 2014); *Whitley v. Cage*, 737 F.3d 980, 985 (5th Cir. 2013). "Mixed questions are not all alike"; thus making "the standard of review for a mixed question [dependent] on whether answering it entails primarily legal or factual work." *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge*,

7

LLC, 138 S. Ct. 960, 967 (2018).

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses." *Webb*, 954 F.2d at 1104 (quoting former Fed. R. Bankr. P. 8013).[3] "A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 701 (5th Cir. 2003) (quoting *Hibernia Nat'l Bank v. Perez (In re Perez)*, 954 F.2d 1026, 1027 (5th Cir. 1992)).

Furthermore, on appeal, courts review a bankruptcy judge's discretionary rulings and decisions for abuse of discretion. *Rozelle v. Branscomb, PC*, Case No. 5:16-cv-01024-RCL, 2017 WL 3301511, at *2 (W.D. Tex. Jul. 31, 2017). A bankruptcy court's decision on the motion to abandon is reviewed for abuse of discretion. *See Mohns, Inc. v. Wilson*, 475 B.R. 674, 680 (E.D. Wis. 2012) (relying on *In re Johnston*, 49 F.3d 538, 540 (9th Cir.1995)). "An abuse of discretion occurs" when the bankruptcy court: (1) applies an improper legal standard, which is reviewed de novo; (2) "follows improper procedures"; or (3) "rests its decision on findings of fact that are clearly erroneous." *Lejeune ex rel. Estate of Caillouet v. JFK Cap. Holdings. LLC (In re JFK Cap. Holdings, LLC)*, 880 F.3d 747, 751 (5th Cir. 2018) (quoting *Barron & Newburger, PC v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 270 (5th Cir. 2015) (en banc)).

---

[3] "As another court has noted, the 2014 amendments to the Federal Rules of Bankruptcy Procedure removed former Rule 8013, but '[d]espite the omission of what existed as Rule 8013 prior to December 2014, logic still compels the same conclusion with respect to the appellate powers of the District Court.'" *In re Atiyeh*, No. 21-2381, 2022 WL 970854, at *1 n.3 (E.D. Pa. Mar. 31, 2022) (quoting *In re Great Atl. & Pac. Tea Co., Inc.*, No. 14-4170, 2015 WL 6395967, at *2 n.1 (S.D.N.Y. Oct. 21, 2015)). Not only do courts continue to rely on former Rule 8013, *see*, *e.g.*, *Rozelle v. Autry (In re Rozelle)*, No. SA-21-CA-173-FB, 2022 WL 709022, at *1 (W.D. Tex. Jan. 31, 2022); *Silicon Hills Campus, LLC v. Tuebor REIT Sub, LLC*, No. 1:20-CV-1201-RP, 2021 WL 783554, at *2 (W.D. Tex. Mar. 1, 2021), but the provisions of the former rule are consistent with typical appellate procedure. Absent a future modification of the rules, binding precedent holding otherwise, or a persuasive opinion that alters this view regarding the appellate procedures, this Court will continue to follow the procedures of the former rule as consistent with appellate procedure in general.

## III. COMPLIANCE WITH BRIEFING REQUIREMENTS

The Trustee objects to Dr. Smith's statement of the case because Dr. Smith fails to support factual assertions with references to the record as required by Fed. R. App. P. 28(a)(6). ECF No. 7 at 9. Rule 28(a)(6) requires the appellant's brief to contain "a concise statement of the case setting out the facts relevant to the issues submitted for review, describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record." "References to the parts of the record contained in the appendix filed with the appellant's brief must be to the pages of the appendix." Fed. R. App. P. 28(e).

"Despite [a] general willingness to construe pro se filings liberally, [courts] still require pro se parties to fundamentally 'abide by the rules that govern the federal courts.'" *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)). Among other things, pro se parties must "brief arguments on appeal." *Id*. A failure to brief an argument constitutes abandonment of the argument. *Yohey v. Collins*, 985 F.2d 222, 224 (5th Cir. 1993). To preserve an issue for appeal, an appellant must brief the issue. *Id*. Failures to cite to the record may result in dismissal of an appeal. *See Moore v. FDIC*, 993 F.2d 106, 107 (5th Cir. 1993) (per curiam).

In reply, Dr. Smith requested an opportunity to submit an amended brief to comply with the procedural requirements. *See* ECF No. 8 at 3. More specifically, he requested that he have until August 9, 2021, to submit an amended brief. *See id*. at 4. Although he ultimately filed an amended brief, *see* ECF No. 10, he did not do so until September 20, 2021. The Court has no need to address whether it should consider this amended brief. Dr. Smith merely seeks to file it to correct procedural deficiencies noted by the Trustee. The Court, however, does not rely on any procedural deficiency to Dr. Smith's detriment. Instead, although the Court notes the Trustee's objection, Dr. Smith's request to amend, and the untimely amended brief, the circumstances do not dictate any further court

action on the asserted procedural deficiencies because Dr. Smith lacks standing to appeal in this case. Through his reply brief, Dr. Smith had ample opportunity to show that he has standing to pursue this appeal, but he failed to do so.

### IV. STANDING

The Trustee argues that "Dr. Smith lacks standing to object to the Motion to Abandon and to bring this appeal." ECF No. 7 at 11. Notably, Dr. Smith does not meet the definition of a creditor as defined in the bankruptcy code. *See* 11 U.S.C. § 101(10). He is not listed as a creditor on Salubrio's sworn schedules, as signed under penalty of perjury by Dr. Smith himself. *See* R. 29-72. Nor has he filed a claim in the underlying bankruptcy case. Moreover, the hearing on the motion clearly reflects that, Dr. Smith's position at that time was that either he or a separate legal entity that he controls, CRMS or MSKIC, owns the property. Supp. R. at 21, 27-31, 35-36, 43-44. 47, 50-51. But standing is lacking even accepting this latter position for purposes here.

Absent standing by the bankruptcy appellant, courts do not reach the merits of a bankruptcy appeal. *Fortune Nat. Res. Corp. v. U.S. Dep't of Interior*, 806 F.3d 363, 367 (5th Cir. 2015). Standing in the bankruptcy context differs from the traditional Article III context. *See Furlough v. Cage (In re Technicool Sys., Inc.)*, 896 F.3d 382, 385 (5th Cir. 2018). "But that does not mean disgruntled litigants may appeal every bankruptcy court order willy-nilly. Quite the contrary." *Id*. Consequently, "standing to appeal a bankruptcy court order is, of necessity, quite limited" given the involvement of "numerous parties with conflicting and overlapping interests." *Id*. To permit "each and every party to appeal each and every order would clog up the system and bog down the courts." *Id*.

In the Fifth Circuit, courts apply a "narrow inquiry for bankruptcy standing – known as the 'person aggrieved test.'" *Id*. This test is a prudential standing requirement applicable in the bankruptcy context, *Dean v. Seidel, (In re Dean)*, 18 F.4th 842, 844 (5th Cir. 2021); *Gibbs & Bruns LLP v. Coho Energy Inc. (In re Coho Energy Inc.)*, 395 F.3d 198, 202 (5th Cir. 2004), and "is more

exacting than the test for Article III standing," *In re Technicool Sys., Inc.*, 896 F.3d at 385 (citations and internal quotations omitted). Instead of showing a "fairly traceable causal connection, a bankruptcy appellant must instead show that he was directly and adversely affected pecuniarily by the order of the bankruptcy court." *Id*. (footnotes, internal quotation marks, and citations omitted). With its "higher causal nexus between act and injury," the bankruptcy standing "restriction narrows the playing field, ensuring that only those with a direct, financial stake in a given order can appeal it." *Id*. (footnote and citation omitted).

To have standing, all bankruptcy appellants, with one exception, must have a pecuniary interest affected by the matter appealed. *Edwards Family P'shp, LP v. Johnson (In re Cmty. Home Fin. Servs., Inc.)*, 990 F.3d 422, 426 (5th Cir. 2021). The lone exception is the bankruptcy trustee – the person entrusted with the responsibility to administer the bankruptcy estate. *Id*. The "trustee's standing comes from the trustee's duties to administer the bankruptcy estate, not from any pecuniary interest in the bankruptcy." *Id*. at 427.

For Article III standing, "a party generally may not appeal . . . to champion the rights of another, and even '[a]n indirect financial stake in another party's claims is insufficient to create standing on appeal.'" *Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation*, 32 F.3d 205, 208 (5th Cir. 1994) (footnotes and citations omitted). In that context, furthermore, "[t]he injury or threat of injury must be both real and immediate not conjectural or hypothetical, and the putative appellant shoulders the burden of alleging facts sufficient to demonstrate that it is a proper party to appeal." *Id*. (footnotes, citations, and internal quotation marks omitted). Given the prudential standing concerns mentioned in the preceding paragraphs, courts may apply these Article III standing requirements in the bankruptcy context. *See Schum v. Zwirn Special Opportunities Fund LP (In re The Watch Ltd.)*, 257 F. App'x 748, 749 (5th Cir. 2007) (per curiam) (applying such requirements and quoting *Rohm* in dicta).

As stated in an historical context, the prudential standing concept includes "at least three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (internal quotation marks and citation omitted). Although in *Lexmark*, the Supreme Court criticized the prudential standing label especially in the zone-of-interest context, *see id*. at 125-27, the Fifth Circuit continues to apply the doctrine in other contexts, *see Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 506 (5th Cir. 2015) (noting that the Fifth Circuit has "long applied the prudential requirement that a party must assert its own rights and we are bound to follow our precedent until the Supreme Court squarely holds to the contrary") (internal citation omitted). The prudential standing doctrine remains "especially important in bankruptcy proceedings which often involve numerous parties who may seek to assert the rights of third parties for their own benefit." *Marable v. Sam Pack's For Country of Lewisville, Ltd.* (*In re Emergency Room Mobile Servs., LLC*), 529 B.R. 676, 685 (N.D. Tex. 2015) (quoting *In re Ampal–Am. Israel Corp.*, 502 B.R. 361, 369 (Bankr. S.D.N.Y. 2013)).

In this appeal, Dr. Smith has simply not shown that he was directly and adversely affected pecuniarily by the appealed order. His initial brief does not make such a showing. And after the Trustee raised the standing issue, Dr. Smith proclaims in his reply brief that he has standing as "the Subchapter V Debtor-in-Possession ("SCVDIP") of the 21-bk-50519-rbk bankruptcy estate." ECF No. 8 at 8. While confident that his role as SCVDIP provides him standing to appeal the bankruptcy order at issue in this appeal, he overlooks flaws in his proclamation.

First, Dr. Smith did not assert his objection on the Motion to Abandon in any role related to Case No. 21-bk-50519. Supp. R. at 15 (showing that Appellant signed the written objections simply

as a "Party-in-Interest" without reference to any SCVDIP). Nor did he appear at the hearing on the motion in such a role. *See, generally,* Tr. (showing no such role). Although in a general sense, "party in interest," includes debtors, trustees, and creditors among others that have a right to "appear and be heard on any issue in a case under [Chapter 11]," *see* 11 U.S.C. § 1109(b), individuals asserting objections or appearing at a motion hearing as a party in interest should affirmatively state their role if it is not apparent from the record. Moreover, Dr. Smith could not have lodged the objection or appeared at the hearing in such a role, because he lodged his objections on April 23, 2021, and attended the hearing on April 29, 2021, before he filed his individual bankruptcy on April 30, 2021.

Although the Bankruptcy Court issued the appealed order on May 3, 2021, it is clear that Appellant's role related to the appealed order was not in any respect related to his individual bankruptcy action that he had yet to file. Furthermore, although a "debtor-in-possession in chapter 11 assumes the substantial duties and responsibilities of a trustee" through 11 U.S.C. § 1107, the bankruptcy court may remove those rights and duties by replacing the debtor with a trustee through § 1104(a). *In re Herberman*, 122 B.R. 273, 280-81 (Bankr. W.D. Tex. 1990). In cases arising under Chapter 11, "it is the debtor-in-possession who assumes [a fiduciary] obligation (unless a trustee is appointed under Section 1104)." *Id*. at 280.

In bankruptcy cases with an appointed trustee, "the debtor-out-of-possession typically has no concrete interest in how the bankruptcy court divides up the estate." *Dean v. Seidel, (In re Dean),* 18 F.4th 842, 844 (5th Cir. 2021) (quoting *Mandel v. Mastrogiovanni Schorsch & Mersky (In re Mandel)*, 641 F. App'x 400, 402-03 (5th Cir. 2016) (per curiam)). In such cases, "a debtor-out-of-possession will rarely have a sufficient interest to challenge a bankruptcy court order." *Mandel*, 641 F. App'x at 402. "Once a trustee is appointed, 'the trustee, not the debtor or the debtor's principal, has the capacity to represent the estate and to sue and be sued.'" *Dean*, 18 F.4th at 844 (quoting

*Mandel*, 641 F. App'x at 402). This latter principle is based upon 11 U.S.C. § 323, which sets out the role and capacity of trustees in two subparagraphs:

> (a) The trustee in a case under [Title 11] is the representative of the estate.
>
> (b) The trustee in a case under [Title 11] has capacity to sue and be sued.

Because § 323 applies to all cases under Title 11, including those arising under both Chapter 7 (like *Dean* and *Mandel*) and Chapter 11, the cited principles from those cases apply equally to Chapter 11 cases.

Before Dr. Smith lodged the instant appeal in this case, the Bankruptcy Court had appointed a Trustee in his individual bankruptcy case, thus removing from Dr. Smith the rights and duties of the trustee. Thus, at the time of the appeal in this case, Dr. Smith was not a debtor-in-possession with the rights and responsibilities of a bankruptcy trustee. He was instead a debtor-out-of-possession without those rights and responsibilities. Even if a debtor-in-possession may have standing without a pecuniary interest, as a trustee would (a matter not decided here), a debtor-out-of-possession must have a pecuniary interest affected by the matter appealed.

Additionally, when appealing as a trustee rather than as an individual, an appellant must secure the services of counsel. Pro se individuals can bring an action only on their own behalf; they cannot pursue an action on behalf of a trust in federal court. *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 301 (E.D.N.Y. 2009) (citing cases). "[I]t is well established that artificial entities, including trusts, 'may appear in the federal courts only through licensed counsel.'" *Naja v. U.S. Tr.*, No. 1:20-CV-02027, 2021 WL 858832, at *3 (M.D. Pa. Mar. 8, 2021) (quoting *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993)). Because the trustee in a bankruptcy case is responsible for the bankruptcy estate, *Edwards Family P'shp, LP v. Johnson (In re Cmty. Home Fin. Servs. Corp.)*, 32 F.4th 472, 484 (5th Cir. 2022), trustees do not appeal or assert claims or arguments on their own behalf. Thus, even if Dr. Smith was a debtor-in-possession with the rights and responsibilities of a

trustee, he would have no authority to represent the trust, i.e., bankruptcy estate, in a bankruptcy appeal unless he secured legal counsel. Even in an official capacity as a SCVDIP, he cannot appeal without legal counsel representing the interests of the bankruptcy estate.

Dr. Smith has not shown any adverse pecuniary effect resulting from the appealed order, either to himself, any controlled third-party entity, or even to Salubrio, now controlled by the Trustee. Of course, even had he showed an adverse pecuniary effect to a controlled third-party entity or to Salubrio, he may not appeal on their behalf and an indirect financial stake in their claims is not sufficient to bestow standing. Notably, as the Bankruptcy Court informed Dr. Smith, "artificial entities such as LLCs, partnerships, corporations, or other artificial entities . . . need to be represented by counsel." *See* Supp. R. at 23. And, as already discussed, Dr. Smith cannot represent an entity pro se.

## V. CONCLUSION

For the foregoing reasons, the Court **DISMISSES** this appeal for Appellant's lack of bankruptcy standing. Contemporaneously, with this Memorandum Opinion and Order, the Court will issue a final judgment dismissing the appeal.

**IT IS SO ORDERED this 5th day of August 2022.**

**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**